Lee, J.
delivered the opinion of the court.
It appears to this court that the severaPWounds of objection successively taken by the intestateYUrthe appellant Edins, and upon which he sought to arrest the collection of his bonds for the purchase money of the land bought of George Hughart and assigned to the appellee McClung, prior to the deeree of the 19th of October 1842, on the original bill of the said Young against George Hughart and others, and the cross bill filed in that cause by the appellee McClung, were either unsupported by proof or successfully removed by the measures adopted by the parties interested, as disclosed by the record of said cases. The loss of a portion of the land, including a valuable coal bank, by reason of an outstanding paramount title, was wholly unsupported by proof; and in fact the equity *350 set up in the original bill upon that foundation was no^ reked upon by the said Young in his supplemental The encumbrance which it was charged rested 1TPorL Bie laud by reason of the vendor’s lien for the ^P8*^ balance of purchase money due to the said Boardman from George Hughart, Young’s vendor, was effectually removed by the payment of that balance ^y the said Charles Hughart for and in the name of his father, to John A. North, the agent of the said j3oar(jmanj October 1836. And the difficulty which had been interposed, founded upon the defective character of the conveyance from Joseph F. Caldwell, as the agent and attorney in fact of the said Boardman, for the land in controversy to George Hughart, was met by the cross bill filed by William McClung convening the said Young, George Hughart and the executors and heirs at law of the said Boardman (who had in the mean time departed this life) before the court, with a view to obtain by its decree a new and perfect conveyance of the legal title to the land from the heirs of the said Boardman to the said George Hughart, and through him to vest the same in the said Young. And all the questions which had been raised by the said Young in his original and amended and supplemental bills touching his obligation to complete the contract for the purchase of the said land from the said George Hughart, and to pay the bonds given by him for the purchase money therefor, which had been assigned to the said McClung, must be regarded certainly, as between the said Young on the one hand and the said George Hughart and McClung on the other, as finally and forever settled and adjudicated by the decree of the 19th of October 1842. That decree affirmed that the alleged loss of part of the land, including the coal bank, by reason of an outstanding paramount title thereto, was not sustained by proof; and that if it had been proven, it was a claim sound *351 ing purely in damages, and not the subject of relief in a court of equity; and that the clouds which rested upon the title to the land by reason of the alleged in the bills had been removed, and that a good title could then be had to the same, for which due provision was thereby made.
'It further appears to this court whether the appellant Bowyer, the surety of the said Young in the forthcoming bonds given by him upon the judgments upon his three bonds, for the purchase money of the said land, assigned to the said McClung, not being a party in either of the causes in which the decree of the 19th of October 1842 was pronounced, was or was not bound by that decree, is a question not material to be decided in these causes; because if it be affirmed that the said appellant Bowyer did not so stand in privity with his principal Young, by virtue of such his suretyship as aforesaid, as to be concluded by the decree of the 19th of October 1842, even in the two cases commenced and prosecuted by him conjointly with Young, and after his death with his administrator, who were concluded by that decree, yet it appears that the original and supplemental bills of the said Bowyer and Young, filed in the Circuit court of Fayette, and subsequently transferred to the Circuit court of Greenbrier, and the original bill filed by the appellants Bowyer and Young’s administrator, in the Circuit court of Greenbrier in March 1847, (which constitute the two cases in those names now in judgment,) exhibit copies of the proceedings of the case of the said Young, and the cross bill of McClung, which resulted in the decree of the 19th of October 1842, and also of the case of Charles Hughart against the said George Hughart and Joseph H. Caldwell, and they are expressly made part and parcel of these cases. Thus the court on the hearing of these causes, on the 23d of October 1849, had all the proceedings in the *352 other causes before it expressly made part of these causes by the appellants Bowyer and Young themselves, presenting all the facts and circumstances of the whole case, and was called upon to decide as between Young and Bowyer on the one hand, and George Hughart and McClung on the other, the same questions which had been determined by the decree'of October 1842, between the latter and the said Young, together with another question presently to be noticed upon the same state of facts and proofs, though presented in a somewhat different state of pleadings; and if the court was right in its adjudication of those questions by its decree of the 19th of October 1842, as in the opinion of this court it was, it did not err in coming to the same conclusions in the decree of the 23d of October 1849. It is true these causes were heard in part upon a demurrer to the amended and supplemental bills in the one case, and a demurrer to the original bill in the other; and it may be said that those bills upon their own allegations showed ample equity," and a proper case for relief, and that the demurrers therefore should have been overruled and the defendants put to answer as to> the facts. But considering the allegations of these bills in the connections which they themselves establish with the other causes, and as illustrated by all the facts and circumstances of the whole controversy thus invoked into these causes, it appears to this court that the whole case might have been as safely and correctly passed upon, by the court, and the legal effect of those facts and circumstances as accurately perceived and determined as if the same had been presented to the court by full answers, stating all the facts again in terms.
Thus in effect it appears to this court that after the decree of the 19th of October 1842, there remained for discussion between these parties but the single question presented by the claim of Charles Hughart, to *353 be substituted to tbe rights of Boardman and his lien upon the said land, by virtue of the payment made by him to North, the agent of Boardman, of the balance of the purchase money due from George Hughart m October 1836, And it appears to this court that this claim of the said Charles Hughart was without any just foundation whatever; that the said payment made by him to North was for and in the name and behalf of his father, the said George Hughart, and for the very purpose of satisfying the debt due to the said Board-man, and extinguishing the lien which he might otherwise assert upon the land; and thus facilitate the collection of the bonds of Young, which had been assigned by his father to the said McClung. And that therefore no lien was created by subrogation or otherwise in favor of the said Charles Hughart, upon the said land, by reason of such payment, at least as against the said Young, the purchaser, and McClung, the holder of the bonds assigned by the said George Hughart. And thus as the said Young could successfully resist any attempt on the part of the said Charles Hughart to set up any such lien, the mere claim on his part did not constitute any sufficient ground for the interference of the court of equity to stay the collection of the purchase money.
It further appears to this court that this claim of the said Charles Hughart to a lien upon the said land for the amount of purchase money paid by him to North, was in no sort established as against the said Young and the said McClung, nor in any degree strengthened by the bill filed by him against the said George Hughart and the said Joseph H. Caldwell to assert said lien, and the decree pronounced in his favor for sale of the land, on the 4th of April 1844. To this cause the said Young and McClung were no parties, and they could not be bound by the acts or omissions of the said George Hughart after the sale of the *354 land by Mm to tbe said Young, and after Ms assign-ment of Young’s bonds to McClung, or by the decree the said Charles Hughart was thereby enabled obtain. The record of this decree as against them, cou^ 0Qly serve to prove the fact that such decree had been rendered and the legal consequences of that fact, and was not evidence of its legal antecedents or the feo'fcs or rights in virtue of which it was pronounced. It was as it respects them, res inter alios acta. And thus . .. x it created no other or better equity in favor of the sa^h Young upon which to resist the collection of the pinchase money claimed by McClung, than did the naked and unfounded claim of Charles Hughart unaided by a bill or a decree. It is true it does appear that the deed from the commissioner Joel McPherson to the said George Hughart, and that from the latter to the said Young for the land in question, were both executed after the institution of the suit of the said Charles Hughart and during its pendency; and it may be said that the said Young quoad that suit must be regarded as a pendente lite purchaser, and as taking the land subject to the decree to be pronounced in that cause. But it is to be observed that although these deeds were made after the suit of Charles Hughart had been commenced, they were executed in virtue of contracts made long anterior, passing the equitable title, and of a decree of a court of competent jurisdiction giving effect to and enforcing those contracts, and that that decree directing those deeds to be executed, was pronounced before the institution of said suit, assuming, although the record does not show the precise time, that the bill of the' appellant Bowyer and the answer of Charles Hughart thereto, correctly state that Charles Hughart’s bill was filed in November 1842. It may therefore, with great reason and justice, be insisted that the deeds to George Hughart and Young, when executed, had relation back to the dates of the *355 respective contracts in virtue of which they were decreed, or at least to the date of the decree, and that the said Young is not therefore to be affected by the consequences attending a purchase pendente lite in other cases, but is to be held entitled in equity to protection against any claim set up on that principle under Charles Hughart’s decree.
But there is another view in which, as it appears to this court, the said Young could successfully resist any pretensions set up against said land by virtue of Charles Hughart’s decree. Charles Hughart’s suit was, as disclosed by the facts in evidence in these cases, commenced and prosecuted, and the decree obtained, under such circumstances of suggestion of falsehood and suppression of truth, of imposition practised on the court by which it was rendered, and of confederacy and collusion with the defendant George Hughart, that the said decree may and'must of necessity, for the protection of the rights of Young and McClung, be held wholly inoperative and ineffectual as to them. George Hughart, in his answer to Young’s first Greenbrier bill, admits that there was a balance of purchase money due from him to Boardman, but states his wish and intention to discharge it in due time, so as'to secure a good title to the complainant, and repels the charge made in the bill that he had ever intimated a contrary intention; and he denies that Young had ever requested him to pass over his bonds for the benefit of Boardman. Charles Hughart, in his answer to Bowyer’s bill, admits that he was instrumental in aiding his father to pay off the debt due Boardman, and he took from North a receipt endorsed on the deed of trust purporting that the money had been received of George Hughart, transmitted through or by the hands of Charles Hughart. It is clear that he knew of the pendency of the suits in Greenbrier, and that the object of paying the money to North was *356 to settle the difficulty by reason of this outstanding balance of purchase money, and show his father entito a clear title to the land; and this object he ac-aided to accomplish. For upwards of six years a^er b-e bad acquired his alleged right by substitution, and until after the object of getting rid of the Green-brier suits and relieving his father from any liability on assignment of the bonds to McClung had been accomplished by the decree of the 19th of October 1842, or until such a liability had become of no con¿delation by reason of the insolvency of the said’ George Hughart, he remains, as far as is disclosed by the records in these cases, perfectly silent upon the subject of his supposed claim; but very shortly after this decree was rendered he files his bill alleging that the payment made by him was on his own account, at the request of his father, but with an agreement that he was to hold the deed of trust for his indemnity. To this bill he makes neither the executors of Board-man, to whom the debt would have been payable if not paid, and to whose rights he claimed to be entitled by subrogation, nor his heirs at law, in whom the legal title to the land still remained, nor the said Young, the purchaser in possession, nor the said McClung, the assignee of Young’s bonds, parties defendants, though the only persons really interested; those whom only he did name as defendants, George Hughart and Joseph Caldwell having no interest whatsoever that could prompt them to make any defence. Of the history of the whole affair and of the facts showing the propriety of making the persons named parties defendants in the cause, it cannot be supposed for a moment he was not fully conusant. Indeed he does not deny in his answer knowledge of any of them. George Hughart, though conusant of all the facts, makes no answer or disclosure in the cause. Though he had taken the benefit in the Green- *357 brier cases of tbe payment to North as a payment made by himself > with money transmitted by or through Charles Hughart, and serving to the debt and the lien on the land, and though he could have shown who the parties really interested were, yet he remains profoundly silent, and the said Charles Hughart is enabled to obtain a decree for the amount of his claim and for a sale of the land. But considering all the facts and circumstances disclosed by the record nii ., attending the institution and prosecution of that suit, it appears to this court that the claim of the said Charles Hughart to a lien on said land could not in good faith be preferred, that it was without just foundation, that there was concealment of facts which he ought to have disclosed and suggestion of matters not founded in truth, that there was concert of action and collusion between him and the said George Hughart, and that the persons really interested who should have been made parties were improperly omitted; and that, - therefore, the decree thus obtained cannot in equity and good conscience be permitted to affect any who might be aggrieved and defrauded thereby; but must be, whenever and wherever necessary to protect the rights of the said Young and McClung, held invalid and ineffectual. That a decree obtained by fraud, imposition or collusion, will be held ineffectul and relieved against for the benefit of those who were defrauded, is a doctrine well sustained by authorities. Richmond v. Tayleur, 1 P. Wms. 734; Barnesly v. Powel, 1 Ves. sen. 119; Reigal v. Wood, 1 John. Ch. R. 402; Bradish v. Gee, 1 Amb. R. 229, 1 Madd. Chy. 300. And in the case of Gifford v. Hort, 1 Sch. & Lef. 386, it was declared by the lord chancellor to be a fraud and imposition upon the court to fail to bring parties known to be interested before the court, and that a decree under such circumstances would not have any effect to defeat the rights of such parties. *358 Thus it appears to this court that the said Young had full and ample means of defence against any claim that might he set up to or against the land purchased . hy him of George Hughart, founded on the decree of Charles Hughart, whenever and in whatever form preferred ; and that the mere possibility that some such unfounded claim might be set up constituted no sufficient ground for the interference of the court to delay the collection of the purchase money, which had been assigned to the said McClung.
It further appears to this court that notwithstanding the decree in favor of Charles Hughart for the sale of said land may and must be held invalid and ineffectual as against Young and McClung, for the reasons which have been assigned, yet it by no means follows that the same is in like manner to be held void as against the appellant Bowyer; but that whether he can now be relieved against the consequences of his own voluntary act in purchasing said land at the sale under that decree, by reason of the character imputed to Charles Hughart’s suit, is a question admitting of and requiring a different consideration. In England it seems that where lands are decreed to be sold by the Court of chancery, the court in most instances undertakes to sell a good title, and therefore it is common to make a reference, to see if a good title can be made to the purchaser; and he will not be compelled to take one that is defective. Marlow v. Smith, 2 P. Wms. 198; Shaw v. Wright, 3 Ves. R. 22; Coffin v. Cooper, 14 Ves. R. 205; Coop. Rep. 138; Sugden on Vend. 105, § 21; 113, § 47 ; Daniels’ Chan. Pr. 1455. In Virginia the course has been different. Here, as to all judicial sales, the maxim caveat emptor strictly applies. The court undertakes to sell only the title, such as it is, of the parties to the suit, and it is the duty of the purchaser to ascertain for himself whether the title of these parties may not be impeached or superseded by *359 some other and paramount title; and if he have just grounds of objection for want or defect of title, he should present them to the court before the tion of the report of the sale. Threlkelds v. Campbell, 2 Gratt. 198; Worsham v. Hardaway, 5 Gratt. 60. The same rule would seem to be recognized in Maryland. Brown v. Wallace, 4 Gill. and John. 479; Ridgly v. Gartrell, 3 Har. and McH. 440; The Monte Allegre, 9 Wheat. R. 644; Finley v. U. S. Bank, 11 Wheat. R. 304. And it is not only the duty of the purchaser to look to the title of the parties in the cause, but also to see that all who have an interest in the property and whose rights ought to be bound by the decree, have been made parties, and have been so concluded by the decree under which he buys. Brown v. Wallace, 4 Gill. and John. 479, opinion of Bland, chancellor; S. C., 2 Bland’s Ch. R. 585, 600 ; Bonnett v. Hamill, 2 Sch. and Lef. 577. The Court of chancery employs its officer to investigate titles, but does not warrant them. Toulmin v. Steere, 3 Meriv. R. 223, Lord Chancellor Eldon’s opinion. Now if the maxim caveat emptor should apply in the ordinary case of a judicial sale in which the purchaser might or might not have knowledge of the facts not disclosed in the case in which the decree was rendered, but which might be necessary to determine who should be the proper parties, and whether any and what title would pass by the sale, it should certainly be applied with still greater stringency where it appears that the purchaser must have had conusance of all the facts and circumstances within the particular case and without, which were necessary to determine the operation and effect of the decree. If ordinarily a clear and strong case should be made to entitle a purchaser to relief against his contract under a judicial sale, after the report of sale has been confirmed by the court, the appellant Bowyer would seem to be urgently called *360 on to make out suck, a case here. It is insisted tkat ke does make out suck a case by showing that tke under wkick ke bought was obtained by fraud and collusion, and is therefore void; and ke alleges that he was ignorant- at tke tkne of kis purchase of tke fraudulent character of tke said decree, and has only since discovered tkat ke can acquire no title under said purchase; and thus it is intended to be inferred why ke did not object to tke commissioner’s report of tke sale. It appears tkat Charles Hughart’s decree was rendered on tke 4th of April 1844; tke sale was made on tke 11th of July 1844, and on tke 2d September 1844 was reported to the court, together with tke bonds of Bowyer and kis sureties for tke purchase money, and in tke regular course of business was confirmed without objection on tke part of Bowyer, and a deed directed to be made to tke purchaser, and leave given tke complainant to withdraw and collect tke bonds. Tke said Bowyer had become tke surety of tke said Young in forthcoming bonds on all of tke three judgments recovered against him by tke said McCIung, and thus had become liable for tke whole of tke unpaid purchase money for tke land, with interest and costs. As far back as October 1835, ke knew of tke pendency of tke two injunction bills wkick had been filed by Young in tke Circuit court of Greenbrier, to stay proceedings on the two- judgments recovered against him in tkat county, and to obtain relief against tke contract made by him for tke purchase of tke land of George Hugkart;. for in that month the bill filed by him and Young conjointly, in tke Circuit court of Fayette county, is prepared and sworn to, for tke purpose of staying proceedings on tke third judgment, tke Fayette judgment, upon tke grounds and equities therein set up;. and in tkat bill he refers to tke two Greenbrier injunctions and the proceedings therein, and makes them part thereof. *361 An injunction is obtained on that bill to tbe Fayette judgment; and tbe case is then suffered by Young and Bowyer to sleep upon tbe docket of tbe Fayette until after tbe decree of tbe 19tb of October 1842, dissolving tbe injunctions and dismissing tbe bills in tbe Greenbrier case. Tbe grounds of equity set up in tbe Fayette injunction bill were tbe same as those alleged in tbe Greenbrier bills; and after they bad been dismissed, and tbe supposed equities wbicb they set up bad failed, tbe said Young and Bowyer then filed a supplemental bill to their original bill in tbe Fayette court, setting up, as a new ground for relief against tbe contract for tbe purchase of tbe land, tbe alleged claim of Charles Hughart to a lien, and tbe decree wbicb be bad obtained for tbe sale of tbe land, tbe purchase thereof by tbe said Bowyer, and tbe confirmation of tbe sale. It is plain that tbe reason why tbe Fayette case of Young and Bowyer was suffered to sleep on tbe docket from April 1836, until after tbe decree of tbe 19th of October 1842 on the Greenbrier ease, was that tbe parties were awaiting tbe decision in that case of tbe same questions and liabilities involved in the Fayette bill. Bowyer was liable for tbe whole debt as surety; be knew of tbe pendeney of tbe Greenbrier bills, tbe object of wbicb was to rescind tbe contract, and in effect thus relieve him of all liability; tbe land was in Greenbrier county till tbe formation of tbe county of Fayétte, and until tbe same event, it may be inferred that both Bowyer and Young were citizens of Greenbrier county, and that they continued for some time after citizens of Fayette; tbe counsel prosecuting Bowyer and Young’s bill in Fayette county, appears to be tbe same counsel who was prosecuting Young’s injunction bills in Green-brier ; Bowyer was awaiting tbe decision in these, by wbicb bis liability might be wholly discharged; and under all tbe circumstances it would seem impossible *362 to believe that he was not during the pendency of those cases kept duly advised by the counsel in all the cases, his own with the rest, of their progress, and upon their determination of the facts and circumstances which brought about so adverse a result, and which it might be expected would be followed by a similar result in the Fayette case, setting up the same equities and pretensions. It is not certainly shown, and can be but matter of inference, that Bowyer was apprised of the pendency of Charles Hughart’s suit prior to the decree; but it is • certain that he was apprised of the suit and the decree before and at the time of the sale of the land by the sheriff. And it has been shown that he must have been fully advised of all the facts and circumstances bearing upon Charles Hughart’s claim and the state of the title to the land, by which he would be fully enabled, upon a proper examination of Charles Hughart’s case, to ascertain the futility of his pretensions, the want of the proper parties to the cause, and the fraudulent character of his whole proceeding. Yet though deeply interested, because the decree subjected to sale the very land to which alone he could look for indemnity against his liability as surety of the said Young, in a debt then amounting, with interest and costs, to 600 dollars perhaps or upwards, he applies for no injunction, nor takes any other measure to arrest the sale, but encourages it by becoming a bidder, and at length becomes the purchaser himself, at the reduced price of 258 dollars 66 cents, and for that amount in installments he gives bonds and security, as required by the decree; the sale is reported to the court, and in the regular course of business confirmed by the court, without objection on his part upon any ground whatever. Shortly after this has been done, the said Young and Bowyer file their supplemental bill in the Fayette case, setting up the supposed loss and *363 eviction of the land under Charles Hughart’s decree and the purchase by Bowyer, and praying the court totally to rescind the contract between Young George Hughart, to enjoin perpetually the judgment in that court for a part of the purchase money, and to decree in favor of Young for the amount which he had already paid upon the contract: and this was followed at intervals by two new original bills filed in the Greenbrier court, praying new injunctions to the-two Greenbrier judgments, the first by Young in his own name, the other by Bowyer, and the appellant Edins as administrator of the said Young, who had in 'the mean time departed this life, and as alleged by Bow-yer totally insolvent; and asking the same relief as in the supplemental bill filed in Fayette.
Now, the question at once presents itself, why did not Bowyer, if he was aware of the pendency of Charles Hughart’s suit, take some steps to arrest a case, the object of which was to subject to another but unfounded claim, the very land to which alone he could look for indemnity against the heavy liability which he had incurred as surety for Young, who was wholly insolvent? Or if he was ignorant of the pendency of this suit prior to the rendition of the decree, why did he not seek by an injunction or otherwise to prevent a sale of the land till he could have an opportunity of contesting Charles Hughart’s claim? Or having failed to adopt a measure of that kind, why did he encourage the sale by becoming a bidder, buy in the land himself, and suifer the sale to be confirmed by the court without objection of any kind? The ready and satisfactory answer, rendered altogether probable by the circumstances disclosed by the records, is that Bowyer did not deem it advisable or expedient to prevent a decree and a sale of the land, or a confirmation of the sale. He had become liable for the whole debt, amounting, with interest and costs of various suits, to *364 upwards of 600 dollars. Young was in insolvent circumstances if living at the time of Charles Hughart’s or if dead, had died as Bowyer alleges, utterly insolvent: (Bowyer says Young died before Charles ®-uS^ar^’s decree was pronounced, and assigns that as one reason why resistance was not made to the proceeding; but this must be incorrect, because, after the confirmation of the sale, a bill was filed in the name of Young in the Greenbrier court, and sworn to on the 1st of April 1845, so that the death of Young must have occurred between that date and the 3d of September 1846, when it was suggested on the record:) all the grounds of equity previously set up against the enforcement of the contract had failed, as adjudicated by the Greenbrier decree, and it was no doubt expected that'it would be followed by a similar decree in the Payette case; and Bowyer must have seen or thought he saw in Charles Hughart’s decree the material of a new and perfect equity, which might be set up against the enforcement of said contract, and a rescission thereof operating a release of his liability, so long in vain pursued, at length by this means likely to be accomplished. To arrest Charles Hughart’s proceeding, or prevent a sale or its confirmation by the court, would of course destroy this nascent equity in the germ. He carefully abstains from doing either ,• and after the supposed new equity had become fully matured by the final decree confirming the -sale and directing a deed to be made for the land, he loses little time in coming forward and setting it up, conjointly with Young as a complete answer to the claim for the purchase money, and for the completion of the contract. That ground of relief proves equally unavailing with those previously relied on, and upon its utter failure, as pronounced by the decree of October 23d, 1849, and immediately thereafter, to wit, on the 24th of November 1849, and upwards of five years after the *365 confirmation of the sale under Charles Hughart’s decree, he turns around and files this bill, seeking to be relieved from his purchase of the land at that This bill was sworn to on the day before the decree of the 23d of October 1849, but seems to have been evidently prepared in anticipation of the result which it announced.
It appears therefore, to this court, considering the conduct of the parties and all the circumstances disclosed in these cases, that the appellant Bowyer was not only informed of, the history and progress of the Greenbrier cases, but that he was also most probably apprised of the pendency of Charles Hughart’s bill and of its nature and objects; or if ignorant of these before the decree was pronounced, yet that he was made aware of that decree in full time to have taken measures to protect himself against it; and failing in so doing, and bidding in the land himself, if he desired to assail the decree and avoid its effect as to himself, it was his duty to bring the subject before the court upon the return of the report of the sale at the latest, and to seek his discharge from his purchase on the gi’ound that he could get no title; at that time, being in possession, as it appears to this court, of all the facts and circumstances which would be required to expose the fraudulent character and utter futility of Charles Hughart’s pretensions. And it further appears to this court, that no new matter not known to the said Bow-yer at that time or which he might not most readily have learned by proper enquiry, has since come to his knowledge, excepting that disclosed by the decree of the 23d of October 1849, pronouncing the utter insufficiency and failure of the new equity erected upon the decree of Charles Hughart, to serve the purpose of offering effectual resistance to the completion of the contract and the payment of the purchase money. That whoever were or might have been deceived and *366 defrauded by that decree, the appellant Bowyer was .not of the number; and that there has been on his if no active participation in' the proceedings in Charles Hughart’s suit, at least such passive acquiescence in the same, and such readiness manifested to turn them to account if they could be rendered available, to defeat McClung’s claims and relieve him of his lability, and such a standing by during their consummation by the sale and its confirmation, with a full knowledge of the facts and circumstances of the whole case, amounting to the grossest laches, if not premeditated with a particular view to the use that might be made of them, as must deny him the aid of a court of equity in the form now invoked; that he has not made out such a case as should induce a court of equity to depart from the rule applying the principle of caveat emjptor to all judicial sales, and denying relief against a purchase upon whatever ground of defect or want of title where the facts were or might have been known to the purchaser; but he suffers the sale to be confirmed without making them known to the court or raising any objection; and that however unfounded were the pretensions of Charles Hughart, yet that between him and Bowyer, the court should not interfere, but leave them to their rights and remedies at law; and that Bowyer must be held here to abide by the results of the venture made by him voluntarily and with his eyes open, in buying the very land that constituted the sole subject of his indemnity against Ms liability as surety for the said Young.
And it further appears to this court that the failure of the commissioner to make the deed to the appellant Bowyer conformably to the decree confirming the'sale in the case of Charles Hughart, and of the court to put him in possession of the land, constitutes no sufficient ground to stay the collection of said Bowyer’s bonds for the' purchase money. He does not seek to *367 rest the relief he asks on this ground. He repudiated the purchase as he alleges, when he discovered that he could not get a good title under the decree. It does not appear that he ever demanded a deed, or even that he was willing to receive one for the land from the commissioner, and give the required lien for the purchase money; hut the contrary is to be inferred from the allegations of his bill. But it was not the intention of the court by its order, to make the execution of the deed a condition precedent to the payment of the bonds for the purchase money, nor did the terms of the sale make it such. The court directed the commissioner to make a deed and to require a lien on the land for the purchase money, and gave leave to the complainant himself to withdraw the purchaser’s bonds and collect them. He was not therefore to be delayed in the receipt of the money decreed him by the failure of the officer of the court to obey its order by making the deed to the purchaser; and if he failed or neglected to perform that duty, it was the purchaser’s business to apply to the court to compel him by attachment or otherwise. As to the possession of the land, no order was asked for by Bowyer to place him in possession, and none therefore made by the court. He was left to obtain possession by legal process, or if necessary, by • an application to the court to enforce its decree if possession were improperly held by any one bound by it.
But the court is of opinion that inasmuch as Young and Bowyer had the right at the time they filed their bill in the Fayette court praying an injunction to the Fayette judgment, to apply to a court of chancery to stay the collection of the purchase money till the difficulties in relation to the title to the land should be removed, and as those difficulties were not removed and the said George Hughart placed in a situation to make to Young a good title until after the Fayette bill had been filed, the court, in dissolving the injunc *368 tion in that case, should have declared such dissolution be 'without damages, as had been done by the decree of the 19th of October 1842, as to the Greenbrier judgments. And for the same reason the said Young and Bowyer would have been entitled to recover the " costs of the Fayette suit except that inasmuch as at ^me they filed their bill in that case to obtain the injection, there was a case or cases pending in the Greenbrier court brought by Young, involving the game controversy and setting up the same equities, they could have obtained the injunction they sought upon application to that court by petition, supplemental bill or otherwise, and it was a needless and improper multiplication of suits and of costs to institute a new and distinct suit in the Fayette court; but that though for this reason they were not entitled to recover the costs of the Fayette suit, yet costs should not have been decreed against them, but the bill in that case should have been dismissed without costs to either party.
As to the decree of the 3d of April 1848, it appears that it was in fact reversed and annulled by the decree of the same court, (the Fayette court,) pronounced on the 3d of April 1849, upon a petition of review filed by Bowyer and Young’s administrator under the law then in force; so that nothing remains for this court to review in the decree of the 3d of April 1848, and it is unnecessary to express any opinion in regard to it.
The court is therefore of opinion that the said decree of the 23d of October 1849 is erroneous in omitting to declare the dissolution of the injunction in the case first named (that commenced in Fayette and transferred to the Greenbrier court) to be without damages, and also in decreeing the costs of that suit to the appellee McClung; and that to that extent it must be reversed with costs to the appellants, and a decree pronounced declaring such dissolution of said injunc *369 tion to be without damages, and dismissing the bill in that case without costs in the Circuit court to either party; and that in all other respects the said decree be affirmed.
And the court is further of opinion that there is no error in the order of the Circuit court made on the 10th of September 1850, in the case of the appellant Bowyer against the said Charles Hughart and John Gruinn dissolving the injunction that had been previously allowed, and that the same be affirmed with costs to the appellees.
Moncure, J. dissented.
The decree in the first and second causes was as follows:
The court is of opinion that there is error in the said decree of the 23d of October 1849, in failing to express and declare that the dissolution of the injunction awarded in the cause first named, by the Circuit court of Fayette county, on the 2d day of April 1836, should be without damages ; and also in this, that said decree awards to the said McClung his costs expended in that cause j this court being of opinion that as the complainants had just right to go into the Court of chancery to stay the enforcement of the judgment recovered in the Circuit court of Fayette county until the difficulties touching the title to- the land purchased of Greorge Hughart by the said Young should be removed, and those difficulties having only been removed after they had commenced their suit and obtained their injunction, the dissolution of the same should have been without damages; and that for the same reason, they would have been entitled to recover their costs in that suit, except that in the opinion of this eourt, a new original suit was unnecessary for the purpose of obtaining an injunction to the Fayette *370 judgment, there being already at that time a cause Pen¿hng in the Circuit court of Greenbrier, instituted the said Young, setting up the same equities adeged in ihe Fayette bill, and involving the whole controversy concerning said land, and in which an injunction to the Fayette judgment might have been obtained until the settlement of the controversy, upon PrGPer application by petition, supplemental bill, or otherwise; but though not entitled to recover costs in Fayette case, yet that the costs of the defendants, or either of them, should not have been decreed against them. And the court is of opinion that there is no other error in the said decree of the 23d day of October 1849.
And the court is further of opinion, that the decree of the 3d of April 1848, having been in fact reversed and annulled by the order and decree of the same court, (the Circuit court of Fayette county,) pronounced on the 3d of April 1849, upon a petition of review previously filed and allowed, there remains in said decree of the 3d of April 1848 nothing for this court to review.
Therefore, it is adjudged, ordered and decreed, that the said decree of the 23d of October 1849, so far as it relates to the cause first named, (that removed from the Circuit court of Fayette to the said Circuit court of Greenbrier,) be reversed and annulled, and that the appellee William McClung do pay to the appellants their costs by them, in the prosecution of their appeal aforesaid, in this court expended. And this court, proceeding to pronounce such decree as the said Circuit court ought to have rendered, touching and concerning the said cause first named, it is adjudged, ordered and decreed, that- the said injunction, awarded therein on the 2d day of April 1836, be and the same is hereby dissolved, but without damages, and that the bill in said cause be dismissed, but without costs to either *371 party. And it is further adjudged, ordered and decreed, that said decree of the 23d of October 1849 be in all other respects affirmed.
And it is further adjudged, ordered and decreed, that as to the said decree of the 3d of April 1848 the said appeal be dismissed.
Which is ordered to be certified to the said Circuit court of Greenbrier county.